**SO ORDERED.**

**SIGNED this 14 day of June, 2006.**



*Dale L. Somers* (signature)
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| **KELLY JAMES TORLINE,** | **CASE NO. 05-12251** |
| **DEBTOR.** | **CHAPTER 12** |

### MEMORANDUM AND ORDER ADDRESSING IN PART
### DEBTOR'S OBJECTION TO CLAIM NO. 6
### FILED BY REBECCA L. BARNHARDT

April 18, 2006, the Court took under advisement the Debtor's objection to proof of claim number 6, filed by creditor Rebecca L. Barnhardt, and Debtor's related motion to discharge indebtedness of Gordon Barnhardt.[1] Having considered the briefs of the parties, it is now ready to rule. The Debtor, Kelly James Torline (hereafter "Debtor") appears by Elizabeth A. Carson of Bruce, Bruce & Lehman, LLC. Creditor Rebecca L. Barnhardt (hereinafter "Creditor" or

---

[1] Doc. 96 (Objection to Rebecca Barnhardt's Proof of Claim) and Doc. 98 (Debtor's Motion to Discharge Indebtedness of Gordon Barnhardt).

"Rebecca") appears by J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, LLC. There are no other appearances. The Court has jurisdiction.[2]

**BACKGROUND.**

This Chapter 12 proceeding was filed on April 20, 2005. On August 23, 2005, Creditor, Rebecca L. Barnhardt, the former wife of Debtor, filed a proof of claim for $607,504, plus interest from April 6, 2004. The basis for the claim is a Journal Entry and Order for Disposition of Property (hereafter "Property Distribution Judgment") filed on July 29, 2004, in the divorce proceedings between Debtor and Rebecca in the District Court of Ford County, Kansas, Case No. 01 D 418.[3] In that Property Distribution Judgment, Debtor was ordered to pay, and to hold Rebecca harmless from the following pre-divorce joint obligations of the parties:

| | |
|---|---|
| Farmers State Bank | $193,978 |
| Bank of America | $140,000 |

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. The allowance or disallowance of a claim against the estate is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(B). There is no objection to venue or jurisdiction over the parties.

This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. Any references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[3] The Debtor has appealed the judgment in the divorce proceeding to the Kansas Court of Appeals. Oral argument has been held, but no decision has been announced. Obviously, a reversal, in whole or in part, of the divorce court's rulings could have a significant impact on the issues before this Court.

| | |
|---|---|
| John Deere | $ 86,450 |
| Citizens Bank, Pretty Prairie | $ 43,450 |
| Citizens State Bank | $ 2,138 |
| Diversified Financial Services | $ 9,520 |
| Gordon Barnhardt | <u>$131,968</u> |
| **TOTAL** | **$607,504** |

Debtor filed an objection to the proof of claim.[4] In general, Debtor contends Rebecca's claim is contingent and should be disallowed under 11 U.S.C. §502 (e)(1)(B).[5] Creditor contends that her claim arises from the Property Distribution Judgment decree which created an obligation independent from the underlying pre-divorce obligations and therefore should not be disallowed as contingent.[6]

**FINDINGS OF FACT.**

Knowledge of the divorce proceedings is critical to understanding this Chapter 12 case and to the Court's resolution of the issues presented. The parties were married on December 19, 1987, and were divorced by order of the state court on May 29, 2002. During the years 1990 through 2001, Rebecca received, by inheritance and gift, Archer Daniels Midland (hereafter "ADM") stock and money having a total value of $1,511,345. When dividing the property in the course of the divorce, the court concluded that it was apparent from the evidence that the purchase of farmland and machinery and the farming operation was made possible only by the substantial contributions and loan collateral derived from Rebecca's gifts and inheritance. For that reason, the court found that equity and fairness could be achieved only by preserving Rebecca's inheritance as much as was reasonably possible and by setting over the agricultural

---

[4] Doc. 96.

[5] Doc. 147. Future references to the Bankruptcy Code in the text shall be to section only.

[6] Docs. 145 and 148.

3

real estate purchased during marriage, with the related debt, to the Debtor. Accordingly, the

Property Distribution Judgment provided the following regarding the Debtor's debts:

> The following debts shall be set over to Respondent [Debtor] as his sole and separate obligation, from which he shall hold Petitioner [Rebecca] harmless, and those debts incurred as purchase money obligations and secured by Petitioner's stock shall be refinanced within 90 days and Petitioner's stock shall be released as collateral, and in the event Respondent is unable to refinance within 90 days and release Petitioner's collateral, Petitioner may move the Court for an order for sale of all assets sufficient to satisfy outstanding purchase money indebtedness which would allow the release of her stock as collateral, and those debts are set forth as follows:
>
> Farmers State Bank of Bucklin (agricultural loans):
>     Loan No. 367583
>     (secured by 32,437 of Archer-Daniels
>     Midland common stock)
>                                                   Amount: $186,916
>
>     Loan No. 355429
>     (secured by Sunflower soil conditioner)
>                                                   Amount: $ 3,616
>
>     Loan No. 348163
>     (secured by John Deere 980 field cultivator)
>                                                   Amount: $ 3,446
>
> Bank of America agricultural loan
> Secured by [31,500 shares of Archer-Daniels Midland Company common stock].
>                                                  Amount: $140,000
>
> John Deere Credit
>                                                  Amount: $ 86,450
>
> Citizens Bank of Kansas, Pretty Prairie, Kansas
> Loan No. 51026909.15
> (refinanced . . . loan to purchase. . . farm)
>                                                  Amount: $ 43,450

Citizens State Bank
Down payment on [farm real estate]
                  Amount: $ 2,138

Diversified Financial Services
Remaining . . .payment for . . . irrigation system
                  Amount: $ 9,520

Gordon Barnhardt
Promissory note dated November 6, 2000 for the purchase of [farm property]
                  Amount: $131,968

**Respondent's Total Debt:   $607,504**

The parties appear to agree that the Property Distribution Judgment gave rise to a judgment lien in favor of Creditor on the Ford County real property of the Debtor.[7]

Debtor did not timely refinance outstanding purchase money indebtedness to allow release of Rebecca's ADM stock, as required by the Property Distribution Judgment. On November 19, 2004, the state court heard Rebecca's motion for an order for sale of all assets sufficient to satisfy outstanding purchase money indebtedness which would allow the release of Rebecca's ADM stock held as collateral by Farmers State Bank, Bank of America, and Citizens Bank of Kansas. On January 31, 2005, the court ordered the sale of assets which were set over to the Debtor in the Property Distribution Judgment filed on July 29, 2004. One March 7, 2005, because no supersedeas bond had been filed to stay the order during the appeal of the Property Distribution Judgment to the Kansas Court of Appeals, an order of sale was issued. This bankruptcy was filed on April 20, 2005, before the sale was held.

---

[7] K.S.A. 60-2202; see Doc. 137 (Debtor's Amended Chapter 12 Plan of Reorganization).

Since the filing of the bankruptcy, the Bank of America loan has been paid in full by Rebecca with money she borrowed from her father, Gordon Barnhardt, and the lien on Rebecca's ADM stock pledged as collateral for that note has been released. In addition, it is undisputed that Debtor has refinanced the loan to John Deere Credit. Debtor contends that he has paid off the Citizens Bank loan of $43,450, also secured by ADM stock, leaving only the $2,138. loan with Citizen's.[8] Rebecca agrees that her proof of claim should be reduced to the extent that Debtor has paid the joint creditors.[9] The largest outstanding joint obligations are therefore the Farmers State Bank of Bucklin note secured by Rebecca's ADM stock and the Gordon Barnhardt note. The parties dispute whether Debtor has an obligation to Rebecca relating to these two notes and her payment to Bank of America.

The position of the Debtor with respect to the Proof of Claim is also reflected in the Debtor's Amended Chapter12 Plan of Reorganization.[10] Assuming that the Kansas Court of Appeals affirms the Property Distribution Judgment and this Court sustains the objection to Rebecca's proof of claim, the pre-divorce debts for which Rebecca was to be held harmless would be treated in the plan as follows:

| | |
|---|---|
| Farmers State Bank | Substantial payments in years 1 & 2, with remainder amortized over 18 years. Rebecca will retain her lien on real estate while the payments are being made. |
| Bank of America | No payments; note paid by Rebecca post-petition |
| John Deere Credit | No payments; note paid by Debtor post-petition |

---

[8] See Docs. 147 (Debtor's brief) and 137 (Amended Chapter 12 Plan).

[9] Doc. 145.

[10] Doc. 137.

6

| | |
|---|---|
| Citizens, Pretty Prairie | No payments; note paid by Debtor post-petition |
| Citizens State Bank | No payments; no proof of claim filed, so unsecured claim treated as discharged |
| Diversified | Payment in full |
| Gordon Barnhardt | No payments; no proof of claim filed, so unsecured claim treated as discharged. |

The Debtor's plan proposes to pay nothing to Rebecca. It is Debtor's position that payment in full of the Farmers State Bank pre-divorce notes as provided in the proposed plan will simultaneously satisfy his obligation to hold Rebecca harmless on those notes, and that Rebecca's claim as to other obligations enumerated in the divorce Property Distribution Judgment should be disallowed pursuant to § 502(e).

The proposed plan alternatively provides that in the event that the Kansas Court of Appeals affirms the relevant portions of the Property Disposition Judgment and this Court determines that Rebecca's claim is "substantially in excess of the amount of the Farmers State Bank loan, the debtor will need to liquidate all assets to satisfy that claim." The Court interprets this statement to be mean that if Rebecca's claim arising from either the Bank of America note or the Gordon Barnhardt note is allowed, significant changes in the Debtor's proposed plan would be required. The Court therefore addresses these two aspects of the proof of claim. Rulings on any remaining objections to the proof of claim, including the Farmers State Bank notes secured, at least in part, by the ADM stock, will be deferred to the confirmation hearing or other appropriate time.

**ANALYSIS.**

**Disallowance of Contingent Claims under § 502(e).**

Section 502(e) provides:

> (e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that-
>
> (A) such creditor's claim against the estate is disallowed;
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or
>
> (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.
>
> (2) Any claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

Section 502 (e)(1) applies only to claims for reimbursement or contribution. State law determines the validity of the underlying claim and the status of the party seeking reimbursement or contribution.[11] Typically, the section applies to co-debtors, sureties, and guarantors.[12] Under this section, a claim for contribution is disallowed to the extent that (1) the assured creditor's claim against the estate is disallowed, (2) the claim for contribution is contingent, or (3) the party seeking contribution asserts subrogation to the rights of the assured creditor under § 509.[13] As to the first condition, generally a claim against the estate is disallowed when such creditor files a

---

[11] *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1050 (5th Cir. 1992); 4 *Collier on Bankruptcy* ¶ 502.06[2][a](Alan N. Resnick & Henry J. Sommer eds.-in-chief. 15th ed. rev. 2006). Future citations are to the paragraph number only.,

[12] 4 *Collier on Bankruptcy* ¶ 502.06[2][b].

[13] *In re Porter*, 50 B.R. 510, 516 (Bankr. E.D. Va. 1985).

8

proof of claim and an objection is sustained.[14] The requirement that a co-debtor's claim be disallowed if the underlying claim against the debtor has been disallowed "expresses the policy that, 'a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety.'"[15]

The disallowance of claims for contribution which are contingent has the purpose of "prevent[ing] competition between a creditor and his guarantor for the limited proceeds in the estate."[16] Stated differently, "[t]he sole purpose served by section 502(e)(1)(B) is to preclude redundant recoveries on identical claims against insolvent estates in violation of the fundamental Code policy fostering equitable distributions among all creditors of the same class."[17] The "focus is on claims by those who *may become* liable to a third party because the debtor fails to satisfy a primary liability to that third party."[18] A right to contribution remains contingent despite a judgment giving a co-debtor a right to indemnification from the debtor.[19]

---

[14] *In re Rowe*, Case No. 05-27589 (Bankr. D. Kan, May 10, 2006) (holding that, except to the extent that the code provides that claims are deemed allowed, a claim is not an allowed claim unless a proof of claim is filed and not disallowed).

[15] 4 *Collier on Bankruptcy* ¶ 502.06[2][c], quoting 124 Cong. Rec. H11,094 (daily ed. Sept. 28, 1978).

[16] H.R. Rep. No. 95-595, at 354 (1977).

[17] *Potter v. CNA Ins. Companies (In re MEI Diversified, Inc.)*, 106 F.3d 829, 831 (8th Cir. 1997), *quoting In re Hemingway Transp., Inc.*, 993 F.2d 915, 923 (1st Cir. 1993).

[18] *Id*.

[19] *In re Friendship Child Devel. Ctr., Inc.*, 164 B.R. 625, 627 (Bankr. D. Minn. 1992).

However, payment of the underlying debt by the co-debtor removes the contingency or "fixes" the co-debtor's right to payment.[20] When that payment is made postpetiton, the claim is allowed under section 502(a), (b), or (c), or disallowed under (d), the same as if the claim had been fixed before the date of filing.[21] "Such claims have the same priority as the underlying creditor's claim and are not elevated or lowered in priority merely because the underlying creditor's claim was extinguished postpetition."[22]

**Bank of America Note.**

Rebecca contends that she has an allowed secured claim against Debtor for the amount she paid to satisfy the Bank of America note by virtue of the hold harmless provisions of the Property Distribution Judgment and her judgment lien. Debtor contends that the payment of the Bank of America loan merely constituted a substitution of a new creditor, Rebecca's father, for the initial creditor, Bank of America, and that Rebecca's claim for repayment of the substituted obligation is contingent within the meaning of § 502(e)(1)(B) because Rebecca has paid nothing from her own funds to repay the new loan from her father.

The Court rejects the Debtor's position. There is no basis to disallow the claim under § 506(e). Pursuant to § 506(e)(2), Rebecca's postpetition payment of the Bank of America claim

---

[20] 4 *Collier on Bankruptcy* ¶ 502.06[3]; *e.g., In re Porter*, 50 B.R. at 516 (holding that upon complete settlement of a claim on which the debtor was jointly and severally liable with his spouse and other, the right to contribution of the debtor's spouse to reimbursement to the extent she paid more than her proportional share of the common burden became complete and enforceable); *In re Early & Daniel Indus., Inc.,* 104 B.R. 963, 967 (Bankr. S.D. Ind. 1989) (holding "a claim for reimbursement or contribution under 502(e) is contingent, and not allowable, except to the extent that the surety or codebtor has actually paid the underlying claim").

[21] 4 *Collier on Bankruptcy* ¶ 502.06[3].

[22] *Id.*, ¶ 502.06[3][a].

10

fixed the claim, and her claim shall be allowed under §§ 502(a), (b), or (c), or disallowed under § 502(d), as if it had become fixed before the date of filing. Debtor presents no argument and no facts as to why Rebecca's claim should be not be allowed under §§(a), (b), or (c) or disallowed under §(d).[23]

There is nothing in § 502(e)(2) which conditions the fixing of the right to indemnification upon the co-debtor's not borrowing funds to pay the underlying obligation. From the perspective of the Debtor, there was not a substitution of Rebecca's father as a creditor in place of Bank of America. Before Rebecca satisfied the Bank of America note, Debtor had direct liability to the Bank of America on the note and an obligation to hold Rebecca harmless from her co-liability on the note. After Rebecca's payment, Debtor has no liability to Bank of America, but his obligation to indemnify Rebecca remains and is noncontingent and quantified in amount. The Court finds no basis to disallow Rebecca's claim for enforcement of the judgment requiring Debtor to hold Creditor harmless from the Bank of America loan.[24]

---

[23] Rebecca filed a proof of claim. Her claim is based upon the Property Distribution Judgment. It is not unenforceable against the Debtor or otherwise subject to disallowance for any of the reasons stated in subsection (b). Her claim is fixed in amount, and the estimation provisions of subsection (c) are not relevant. Finally, there is no assertion of a basis to disallow the claim under (d) because of rights under §§ 522, 542, 543, 544, 545, 547, 548, 549, 550, 553, or 724.

[24] Although the parties do not raise the issue, the Court finds that Rebecca's claim is secured by her judgment lien. The existence of the judgment and the related lien, in the opinion of the Court, removes Rebecca's claim from the usual rule with respect to indemnification claims that the priority of the claim remains that of the underlying debt. The court finds this rule applies when the right to contribution is based upon the common law rights of co-debtors or guarantors when there is no judgment giving rise to a lien. To hold otherwise would ignore the entry of the Property Distribution Judgment and the lien granted by Kansas law.

11

**Gordon Barnhardt Note.**

Rebecca's secured proof of claim includes her liability to her father, Gordon Barnhardt, on a pre-divorce unsecured note for $131,968. Her position is that Debtor has liability to her for the full amount of the note under the terms of the Property Distribution Judgment and that this obligation is secured by a judgment lien. Debtor contends the claim should be disallowed under §§ 502(e)(1)(A) and (e)(1)(B).

As noted above, subsection (e)(1)(A) provides that a claim for reimbursement or contribution should be disallowed if the underlying creditor's claim against the estate is disallowed. Debtor contends in his Motion to Discharge Indebtedness that because Gordon Barnhardt was listed as a creditor but has not filed a proof of claim, Debtor's obligation to Gordon Barnhardt should be discharged and that the portion of Rebecca's claim which is based on that note should also be discharged. In his brief in support of his objection to Rebecca's proof of claim, Debtor equates discharge of his liability on Gordon Barnhardt's claim with disallowance of that claim and urges the discharge as a basis for disallowance of Rebecca's claim under § 502(e)(1)(A).

The Court denies the Debtor's motion for discharge of his debt to Gordon Barnhardt and his objection to Rebecca's proof of claim premised upon § 502(e)(1)(A) because of such alleged discharge. As to the contention of discharge, in a Chapter 12 case, a debtor does not receive a discharge until "completion of all payments under the plan."[25] Debtor's motion seeking discharge at this stage in the case when a plan has not been confirmed and plan payments have not commenced is premature. Further, if the Debtor's motion for discharge were not premature

---

[25] 11 U.S.C. 1228(a).

Case 05-12251    Doc# 163    Filed 06/14/06    Page 12 of 15

and were granted, the fact of discharge would not equate to disallowance, within the meaning of § 502(e)(1)(A), and thereby be the basis to disallow Rebecca's claim. Discharge and disallowance are separate concepts. A debtor may be discharged from an allowed claim.

However, the Court does find that failure of Gordon Barnhardt to file a proof of claim gives rise to disallowance of Rebecca's claim within the meaning of § 502(e)(1)(A). Rule 3002(a) provides that an unsecured creditor must file a proof of claim for the claim to be allowed for purposes of § 502(e)(1)(A). No proof of claim has been filed, and the time for the creditor to file a proof of claim has expired.[26] Time for the trustee or a co-debtor to file a proof of claim on behalf of a creditor has also expired.[27] Gordon Barnhardt's claim against Debtor has been disallowed.

Debtor also asserts that Rebecca's claim for indemnification with respect to the pre-divorce joint obligation to her father should be disallowed under § 502(e)(1)(B) because it is contingent as of the time the Court is considering disallowance. The Court agrees that Rebecca's claim for indemnification is contingent based upon the current record. Unlike the Bank of America note, Rebecca has not paid her obligation to her father. Although Rebecca holds a judgment against the Debtor that he shall hold her harmless from her obligation to her father on the pre-divorce note, the current nature of the judgment obligation is indemnification of a co-debtor which remains contingent until fixed by payment. The fact of a state court judgment does

---

[26] F. Bankr. Rule 3002 (creditor must file no later than 90 days after the first date set for the meeting of creditors). The meeting of creditors was first set for May 25, 2005. Doc. 3.

[27] F. Bankr. Rule 3004 (debtor or trustee may file a proof of claim within 30 days after the expiration of the time for the creditor to file); F. Bankr. Rule 3005 (guarantor, surety, indorser or other codebtor may file a proof of claim within 30 after expiration of the time for the creditor to file).

13

not make § 502(e)(1)(B) inapplicable.[28] For these reasons, because the underlying claim has been disallowed and because Rebecca's claim is contingent, her claim in its present posture is subject to disallowance under § 502(e)(1).

However, this finding is without prejudice to Rebecca's right to seek allowance of the claim under § 502(e)(2) if her right to payment from the Debtor becomes fixed during the pendency of this case. Subsection (e)(2) allows a claim for contribution or indemnification which becomes fixed after the commencement of the case to be determined without regard to § 502(e)(1). The subsection has no outer time limit. For example, if the claim becomes fixed while the case is pending by Rebecca's payment of the pre-divorce obligation to her father, her position as to the claim of Gordon Barnhardt would become similar to her present position as to the Bank of America claim. The rulings made at this time would not foreclose her from seeking allowance of the claim to the extent of subsequent payment.

**CONCLUSION.**

In conclusion, the Debtor's Objection to Rebecca Barnhardt's Proof of Claim (Doc 96) is sustained as to the portions of the claim relating to notes paid by the Debtor post-divorce and is denied as to Rebecca's claim for indemnification for her payment of the Bank of America note. The objection is sustained as to the note of Gordon Barnhardt to extent the Debtor relies upon § 502(e)(1)(A) and (B), but such ruling is without prejudice to Rebecca's right to assert the exception to § 502(e)(1) stated in § 502(e)(2), if the claim against Debtor becomes fixed during the pendency of this case. Rulings on additional issues addressed by the objection, if still in

---

[28] *See In re Friendship Child Devel. Ctr., Inc.*, 164 B.R. at 627.

issue, will be addressed in the confirmation process or other appropriate time. Debtor's Motion to Discharge Indebtedness of Gordon Barnhardt (Doc 98) is denied as premature.

**IT IS SO ORDERED.**

# # #