**SO ORDERED.**

**SIGNED this 22 day of December, 2006.**



*Dale L. Somers* (signature)
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

KELLY JAMES TORLINE,             CASE NO. 05-12251
                             DEBTOR.            CHAPTER 12

### MEMORANDUM AND ORDER FOLLOWING TRIAL ON OBJECTION TO CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN

On November 20 and 21, 2006, trial was held on objections to confirmation of the Debtor's Third Amended Chapter 12 Plan of Reorganization (hereafter "Plan"). The Debtor, Kelly James Torline (hereafter "Debtor") was present and represented by Elizabeth A. Carson of Bruce, Bruce & Lehman, LLC. Creditor Rebecca L. Barnhardt (hereinafter "Rebecca") was present and represented by J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, LLC.

The Chapter 12 Trustee, Edward J. Nazar, was also present. There were no other appearances. The Court has jurisdiction.[1]

The Plan was filed on September 8, 2006. Objections were filed by Rebecca Barnhardt, Debtor's ex-wife, and by Farmer's Sate Bank of Bucklin. Counsel for the bank was present at the start of trial but announced that because he was satisfied that Debtor intended to pay his client's claim in full, he would not participate in the trial. Rebecca and Debtor presented exhibits and testimony. The court heard arguments of counsel. Following the submission of post-trial briefs, the Court took the matter under advisement. The Court is now ready to rule.

**FINDINGS OF FACT.**

Knowledge of the divorce proceedings is critical to understanding this Chapter 12 case and to the Court's resolution of the issues presented. The parties were married on December 19, 1987, and were divorced by order of the District Court of Ford County, Kansas[2] on May 29, 2002. During the years 1990 through 2001, Rebecca received, by inheritance and gift, Archer Daniels Midland (hereafter "ADM") stock and money having a total value of $1,511,345.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. The confirmation of a plan is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(L). There is no objection to venue or jurisdiction over the parties.

This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. Any references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[2] Case No. 01 D 418.

Approximately two years after the divorce was granted, the state court entered a Journal Entry and Order for Disposition of Property (hereafter "Property Judgment").

When dividing the property in the course of the divorce, the court concluded that it was apparent from the evidence that the purchase of farmland and machinery and the farming operation was made possible only by the substantial contributions and loan collateral derived from Rebecca's gifts and inheritance. For that reason, the court found that equity and fairness could be achieved only by preserving Rebecca's inheritance as much as was reasonably possible and by setting over the agricultural real estate purchased during marriage, with the related debt, to the Debtor. Accordingly, the Property Judgment provided the following regarding the Debtor's debts:

> The following debts shall be set over to Respondent [Debtor] as his sole and separate obligation, from which he shall hold Petitioner [Rebecca] harmless, and those debts incurred as purchase money obligations and secured by Petitioner's stock shall be refinanced within 90 days and Petitioner's stock shall be released as collateral, and in the event Respondent is unable to refinance within 90 days and release Petitioner's collateral, Petitioner may move the Court for an order for sale of all assets sufficient to satisfy outstanding purchase money indebtedness which would allow the release of her stock as collateral, and those debts are set forth as follows:
>
> Farmers State Bank of Bucklin (agricultural loans):
>     Loan No. 367583
>     (secured by 32,437 of Archer-Daniels
>     Midland common stock)
>                                                                  Amount: $186,916
>
>     Loan No. 355429
>     (secured by Sunflower soil conditioner)
>                                                                    Amount: $ 3,616

Loan No. 348163
(secured by John Deere 980 field cultivator)

Amount: $ 3,446

Bank of America agricultural loan
Secured by [31,500 shares of Archer-Daniels Midland Company
common stock].

Amount: $140,000

John Deere Credit

Amount: $ 86,450

Citizens Bank of Kansas, Pretty Prairie, Kansas
Loan No. 51026909.15
(refinanced . . . loan to purchase. . . farm)

Amount: $ 43,450

Citizens State Bank
Down payment on [farm real estate]

Amount: $ 2,138

Diversified Financial Services
Remaining . . .payment for . . . irrigation system

Amount: $ 9,520

Gordon Barnhardt
Promissory note dated November 6, 2000 for the purchase of [farm
property]

Amount: <u>$131,968</u>

**Respondent's Total Debt:** **$607,504**

The Property Judgment also addressed division of bank accounts, including awarding to Debtor and Rebecca one half of Rebecca's AmeriTrade account, stating the value to each as $43,720.

In September and October 2004, within 90 days after the Property Judgment, Debtor obtained new financing from the Bucklin National Bank. The largest loan was in the amount of $121,500 and was secured by real estate and farm equipment. In addition there were two new operating loans for $50,000 and $46,500, one secured by crops and the other secured by crops,

4

real estate, and equipment. The loan proceeds were used to pay John Deere Credit, Peggy Torline (Debtor's mother), the real estate note with Citizen's Bank of Kansas (one of two notes with that bank secured by Rebecca's ADM stock), two small machinery notes held by the Farmers State Bank of Bucklin, and attorney fees.

Debtor did not timely refinance outstanding purchase money indebtedness to allow release of Rebecca's ADM stock, as required by the Property Judgment. On November 19, 2004, the state court heard Rebecca's motion for an order for sale of all assets sufficient to satisfy outstanding purchase money indebtedness which would allow the release of Rebecca's ADM stock held as collateral by Farmers State Bank, Bank of America, and Citizens Bank of Kansas. On January 31, 2005, the court ordered the sale of Ford County real estate and machinery and equipment which had been set over to the Debtor in the Property Judgment filed on July 29, 2004. One March 7, 2005, because no supersedeas bond had been filed to stay the order during the appeal of the Property Judgment to the Kansas Court of Appeals, an order of sale was issued. This bankruptcy was filed on April 20, 2005, before the sale was held. The Property Judgment was affirmed by the Kansas appellate courts during the pendency of this case.

On August 23, 2005, Rebecca filed a proof of claim for $607,504, plus interest from April 6, 2004. The basis for the claim is the Property Judgment. In that judgment, the following pre-divorce obligations of the parties were set over as Debtor's sole responsibility, from which he was to hold Rebecca harmless:

| | |
|---|---|
| Farmers State Bank | $193,978 |
| Bank of America | $140,000 |
| John Deere | $ 86,450 |
| Citizens Bank, Pretty Prairie | $ 43,450 |
| Citizens State Bank | $ 2,138 |
| Diversified Financial Services | $ 9,520 |

5

|  |  |
|---|---|
| Gordon Barnhardt | $131,968 |
| **TOTAL** | **$607,504** |

Debtor filed an objection to the proof of claim.[3] In general, Debtor contended Rebecca's claim is contingent and should be disallowed under 11 U.S.C. §502 (e)(1)(B).[4] The Court by Memorandum and Order Addressing in Part Debtor's Objection to Claim No. 6 filed by Rebecca L. Barnhardt, filed on June 14, 2006, held: (1) The objection was sustained to the extent the Debtor paid the underlying notes post-divorce (John Deere Credit and the larger of two notes owed to Citizens State Bank); the objection was denied as to Rebecca's claim relating to the Bank of America note; and the objection was sustained without prejudice as to the claim arising from the Gordon Barnhardt note. After the court's order, Rebecca on November 17, 2006 filed an amended proof of claim, that lists the following basis for recovery of $494,647.08:

|  |  |
|---|---|
| Farmers State Bank | $200,936.34 |
| Bank of America | $151,738.85 |
| Citizens State Bank | $ 2,289.39 |
| Gordon Barnhardt | $139,682.50 |
| **TOTAL** | **$494,647.08** |

Rebecca also filed a proof of claim as Trustee of the Ashley B. Torline, Lauren N. Torline, and Jeff K. Torline Trusts (hereafter Children's Trusts). The claim is for unpaid cash rent of farm property owned by the trusts and is in the amount of $10,800 plus interest to the date of filing. Debtor objected to this claim based upon the alternative theories that all rent was paid and that if any rent was unpaid, its collection is barred by the statute of limitations.

---

[3] Doc. 96.

[4] Doc. 147. Future references to the Bankruptcy Code in the text shall be to section only.

6

The Plan provides for the payment of priority claims of the Chapter 12 Trustee, bankruptcy attorney fees, and administrative expenses of operation of the farming operation during the bankruptcy. As to secured creditor Bucklin National Bank, with a claim of $226,019.12, the Plan proposes that the bank will receive its scheduled payments, release its mortgage on Debtor's interest in Ford County property in sections 10-29-23 and 32-26-22, be granted a replacement mortgage on property in section 32-28-21, and retain its lien in machinery, equipment, and vehicles. The Plan proposes to pay in a lump sum the secured claims of Rebecca Barnhardt (in the amount of $149,629.89 plus interest to date of payment, the amount due with respect to the Bank of America note), Diversified Financial (in the amount of $17,804.61), and divorce attorneys fees from funds being held in trust accounts. As to allowed unsecured claims, the Plan proposes to pay in full Farmers Sate Bank ($200,936.34, with no post-petition interest or attorney fees) and Elizabeth Torline ($43,375.34), Debtor's mother. The Plan will be funded by proceeds from the sale of portions of sections 10-29-23 and 32-26-22 in Ford County, which Debtor anticipates will generate approximately $355,000. The Plan provides for no payment to the Children's Trusts, based upon the filed objection, and no payments to Citizen's State Bank and Gordon Barnhardt (two of the obligations assigned to Debtor in the Property Judgment) because no proofs of claim were filed by the bank or Gordon Barnhardt. The Plan treats "Rebecca's claims based upon the contingent obligation under the 'hold harmless' order of the decree of divorce" as disallowed.

Rebecca objected to the Plan. Her primary objection was that she has a secured claim for $513,992.00, plus interest, such that the Plan violates § 1225(a)(5) when not making payment in full of her claim. She also objected to the treatment of Bucklin National Bank, contending that

7

she has a first and prior interest in the Ford County real property securing Bucklin National Bank's claim. Additional objections were that the Plan fails to account for Rebecca's interest in the assets awarded to the Debtor in the Property Judgment and that the Plan was not proposed in good faith.

On November 17, 2006, Rebecca paid off the notes of Citizen's Bank of Kansas, Pretty Prairie, and Gordon Barnhardt, which were the two pre-divorce obligations of Rebecca incurred for the purchase of the NW/4 and W/2 NE/4 of 32-28-21 in Ford County, which land was titled in her name. The bank note was secured by Rebecca's ADM stock. She paid the bank $2,542.53. The funds were proceeds from a new note to the same bank in the amount of $2,500. The Gordon Barnhardt note principal and all accrued charges were paid by a new note to Gordon Barnhardt for $154,745.96, due with interest on November 17, 2007. On November 17, 2006, Rebecca also paid in full the note of Farmers State Bank, a pre-divorce joint obligation of Debtor and Rebecca. The amount owed, $222,201.37, was paid from the proceeds of a new loan in Rebecca's name only with the same bank.

During trial counsel for Debtor announced that it was the intent of the Plan to pay in full the claim of Rebecca relating to the Bank of America note (including pre- and post-petition interest) and the full amount of principal and pre- and post-petition interest and other charges, if any, owed to Farmers State Bank and Citizens State Bank, Pretty Prairie so that these creditors will release Rebecca's ADM stock, which at the time of the divorce secured the two bank debts. Based upon these amendments to the Plan, the remaining dispute regarding payments to be made under the Plan is limited to the Gordon Barnhardt note and the rent claim of the Children's

8

Trusts. There is also a dispute whether Debtor has a right to $43,720 from the AmeriTrade account or to one half of the present value of the account.

**GORDON BARNHARDT NOTE.**

Rebecca asserts that her obligation to Gordon Barnhardt is an allowed secured claim. Debtor responds that the claim is contingent and therefore disallowed or, in the alternative, the funds were a gift from Gordon Barnhardt, Rebecca's father. The Court finds that Rebecca holds an allowed claim arising from the Property Judgment provision that the Gordon Barnhardt Loan shall be Debtor's sole obligation, from which he shall hold Rebecca harmless.

The Court understands the assertion that the claim is contingent based upon this Court's June 14, 2006 Order sustaining Debtor's objection to this element of Rebecca's claim without prejudice based upon § 502(e)(1)(B). That subsection provides in relevant part:

> (e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that-
>
> (A) such creditor's claim against the estate is disallowed;
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

The Court reasoned that Rebecca's claim was contingent, because unlike her claim relating to the Bank of America note, she had not satisfied a pre-divorce joint obligation to Mr. Barnhardt, and the "current nature of the judgment obligation is indemnification of a co-debtor which remains contingent until fixed by payment." However, this finding and the additional analysis of the claim was based upon the factual finding, made in accord with the position of both parties,

9

that the Barnhardt note was a pre-divorce joint obligation of Debtor and Rebecca. At trial, is was conclusively established that the note was the sole obligation of Rebecca. Subsection 502(e)(1)(B) therefore has no applicability because it is limited to claims for "reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor." The Barnhart note is the unsecured sole obligation of Rebecca. The Court's analysis in the June 14, 2006 Order regarding the Barnhardt note was based upon an erroneous factual premise and is hereby set aside.

The Court finds that Rebecca's claim arising from the Property Judgment relating to the Barnhardt note is an allowed claim. The note is dated November 6, 2000 and is between Rebecca and her father only. It is due in five years, on November 6, 2005. Funds were disbursed only to Rebecca. The note says at the top that it is "for purchase of 240 acres farm north of Bucklin," and this is real property which was awarded to Debtor in the Property Judgment.

As to the Debtor's liability to Rebecca, paragraph 37 of the Property Judgment provides in part:

> . . . the promissory note to Gordon Barnhardt shall be set over as Respondent's sole and separate obligation subject to the terms of the contract entered into for the loan to purchase the real estate in Ford County, Kansas, described as the [NW4 and W2/NE4 of Section 32-28-21 in Ford County] and Respondent shall hold Petitioner harmless for nonpayment of that note.

The "ordered, adjudged and decreed" portion of the Property Judgment provides in part:

> . . . that the property and debts of the parties be divided and allocated as set forth below:

\* \* \*

10

> 2. <u>Respondent's Debts</u>
> The following debts shall be set over to Respondent as his sole and separate obligation, from which he shall hold Petitioner harmless, . . ..
>
> * * *
>
> Gordon Barnhardt
> > Promissory note dated November 6, 2000 for the purchase of northwest quarter and west half of northeast quarter of 32-28-21 in Ford County, Kansas
> > Amount:     $131,968

These provisions unambiguously provide that the Barnhardt note is the Debtor's sole and separate obligation. Because there is no creditor/debtor relationship between Debtor and Gordon Barnhardt, the order that Debtor is solely liable is effectuated by the money judgment in favor of Rebecca in the amount of the note, coupled with the hold harmless provision.

The Court construes the Property Judgment as granting Rebecca a judgment against Debtor for the amount owed on the Gordon Barnhardt note in the principal sum of $106,500, plus interest. The Property Judgment recites the amount due on both November 15, 2001, the date the divorce was filed, and April 6, 2004, the date of trial on the property division issue. The amount recited in the "ordered, adjudged and decreed" set forth above is the amount of the obligation on April 6, 2004. The amount due at confirmation may include additional interest.

The Court finds the unambiguous intent of the Property Judgment was to require Debtor to pay the Barnhardt note. The proceeds of the note were used to purchase farm property awarded to Debtor by the Property Judgment, and that judgment is based upon the principle that purchase money obligations be paid by the spouse who is awarded the land. In addition to the Barnhardt note, the $11,000 proceeds of the note with Citizens Bank of Kansas, Pretty Prairie were also used to purchase the same tract of land. Debtor has agreed that he has liability to hold

11

Rebecca harmless from this obligation and has stated the Plan shall pay this obligation in full. The only difference between the Barnhardt note and this Citizens note is the fact that the Citizens' note was secured by Rebecca's ADM stock and the Barnhart note was unsecured. The Court finds that difference immaterial to the divorce court's entry of a judgment in favor of Rebecca for the amount of the notes.

As of date of filing, April 20, 2005, the Gordon Barnhardt note was not due, so Debtor's obligation to pay the note and hold Rebecca harmless was unmatured. Unmatured claims are allowed in bankruptcy. Section 502(a) provides that claims are deemed allowed, unless a party in interest . . . objects." As to claims for which an objection is filed, § 502(b) provides in part as follows:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that -
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
> ∗∗∗
> (5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

Thus, "the mere fact that a claim is . . . unmatured does not render it unenforceable."[5] The § 523(a)(5) exception to discharge is for unmatured debts to a former spouse for alimony, maintenance, or support in connection with a divorce decree. Debtor's obligation for the

---

[5] 4 *Collier on Bankruptcy* ¶ 502.03[2][b][iii] (Alan N. Resnick & Henry J.Sommer eds.-in-chief, 15th ed. rev. 2006).

12

Barnhardt note is property division, not alimony, maintenance, or support. Likewise, contingent claims are allowed, subject to estimation by the court.[6]

Debtor argues that the Barnhardt portion of Rebecca's claim should not be allowed because Gordon Barnhardt made a gift of the funds to Rebecca and has no intention to require payment. He cites a Kansas case holding that when a parent gives money to a child, there is a presumption that the parent has given the child a gift.[7] Assuming such a presumption arises in this case, there is ample evidence to rebut the presumption. When initially advancing the funds for purchase of the land, Gordon Barnhardt received a note from Rebecca. When marking the initial note paid in November 2006, Gordon Barnhardt did not forgive the indebtedness, but received a new note from Rebecca. Rebecca testified that her father expected payment. The advancement from Gordon Barnhardt to Rebecca was not a gift.

Therefore Rebecca has an allowed claim for the principal and interest of the Barnhardt note.

**REBECCA'S CLAIM RELATING TO THE GORDON BARNHARDT NOTE IS SECURED.**

The next question is whether Rebecca's claim is secured. The Property Judgment does not expressly state that the obligations of the Debtor to Rebecca are secured. The Court finds however that the judgment against Debtor for the benefit of Rebecca is secured by a judgment lien arising under K.S.A. 60-2202(a). It provides in part:

> (a) Any judgment rendered in this state by a court of the United States or by a district court of this state in an action commended

---

[6] *Id.*;11 U.S.C. § 502(c).

[7] *University State Bank v. Blevins*, 227 Kan. 40, 605 P.2d 91 (1980).

13

under chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered. Except as provided in subsection (c)[concerning claims against a state or municipal employee], the lien shall be effective from the time at which the petition stating the claim against the judgment debtor was filed but not to exceed four months prior to the entry of the judgment.

As discussed above, the Property Judgment granted Rebecca a judgment for the principal and interest on the Barnhardt note. Debtor contends that a K.S.A. 60-2202(a) judgment lien did not attach because Debtor's obligation is contingent. Debtor cites *In re Kelly*,[8] that held in Kansas a judgment lien does not attach to secure periodic alimony payments which are subject to amendment until the payments are past due. However, this judgment is property division, not alimony, and the judgment is not subject to modification.

The Kansas Supreme Court has for many years held that a judgment for property division is enforceable as is any other judgment.[9] A lien expressly ordered as part of a property settlement judgment to be paid periodically secures the entire judgment, although the lien may be foreclosed only as to past due periodic payments.[10] "The provision of the decree ordering payments in installments did not take from it the character of finality nor destroy the lien imposed by the court to secure payments of all of the installments."[11] Under Kansas law, it is

---

[8] *Rajala v. Kelly (In re Kelly),* 169 B.R. 721 (Bankr. D. Kan. 1994). *See also Brieger v. Brieger*, 197 Kan. 756, 421 P.2d 1 (1966) (holding installments of child support ordered in a divorce decree become final judgments and constitute a lien on the reality of the delinquent parent when they are due and unpaid).

[9] *Bassett v. Waters*, 103 Kan. 853, 176 Pac. 663 (1918).

[10] *Stoner v. Stoner*, 134 Kan. 356, 5 P.2d 847 (1931); *Wichita Fed. Sav. and Loan v. North Rock Rd. Ltd. P'ship*, 13 Kan. App.2d 678, 779 P.2d 442 (1989).

[11] *Wichita Fed. Sav. and Loan Ass'n v. North Rock Rd. Ltd. P'ship*, 13 Kan. App.2d at 682, *quoting Stoner v. Stoner*, 134 Kan. at 360.

14

only periodic payments for alimony and child support which have been held not to be secured by liens until past due.

In this case, in contrast to the cases cited in the previous discussion concerning judgment liens for periodic payments of property settlement judgments, the order does not expressly impose a lien. However, there is no indication in these Kansas decisions that the presence of an express order or an agreement of the parties that the judgment is secured by a lien was material when the court determined the lien attached before the periodic payments were due. There is no indication that the result would have been different if the only basis for a lien had been the judgment lien statute. This Court predicts that a Kansas court would hold that the property division judgment in favor of Rebecca setting the Gordon Barnhardt note over to Debtor as his sole and separate liability is secured by a K.S.A. 60-2202 judgment lien on Debtor's interest in Ford County real property, as of four months before the entry of the Property Judgment. Because the lien attached to all of the Debtor's interest in Ford County real property as of March 29, 2004, Rebecca's lien is superior to the interest of Bucklin National Bank, granted by mortgage recorded on November 19, 2004.

As an alternative theory, Rebecca argues that the Court should find an equitable lien. The cases relied upon hold that even though an express lien was not ordered in a property settlement and the judgment therefore would ordinarily be secured only by an avoidable statutory lien, an unavoidable equitable lien arose because it was clear from the property

15

settlement decree that specific property was to be the source from which the debt was to be paid.[12] Because the Court has found a statutory lien, it does not address this issue.

**THE RENT CLAIM OF THE CHILDREN'S TRUSTS.**

Debtor objected to the rent claim filed by Rebecca as trustee of the Children's Trusts. At trial, Rebecca offered evidence on this claim that was not made available to the Debtor until the first day of trial. The Court allowed Debtor's counsel thirty days to review and respond to Rebecca's exhibits. Holding this order until receipt of that information would unduly delay the filing of an order resolving the primary issues between the parties. The Court therefore will address the claim of the Children's Trusts in a supplemental memorandum and order.

**AMERITRADE ACCOUNT.**

Although the Property Judgment awards a portion of Rebecca's AmeriTrade account to the Debtor, this transfer has not occurred. Debtor claims he is entitled to one half of the present appreciated value of the account, and Rebecca asserts that Debtor is entitled to only $43,720, the value attached to the one half interest in the Property Judgment.

The Court holds that Debtor is entitled to one half of the value of the account on the date of division. The Property Judgment made identical awards to both parties of $43,720, identified as one-half of the account. It is clear that the court intended each party to have an equal interest in the account as of the date of division. Otherwise there would be no person entitled to any appreciation between the date of the judgment and the date of the division. The Property

---

[12] *Parker v. Donahue (In re Donahue)*, 862 F.2d 259 (10th Cir. 1988); *In re Petroleum Products, Inc.*, 150 B.R. 270 (D. Kan. 1993); *Borman v. Leiker (In re Borman)*, 886 F.2d 273 (10th Cir. 1989).

16

Judgment cannot be construed to award a fixed sum to Debtor and the remainder of the account to Rebecca.

The Court's equal division of the account assumes that Rebecca, who has controlled the account since the divorce was granted and the Property Judgment entered, has not made any withdrawals. If there have been withdrawals, calculations will be necessary to effectuate the intent of the divorce court to award each spouse one half of the value.

**DEBTOR'S PLAN DOES NOT SATISFY THE STANDARDS FOR CONFIRMATION.**

Debtor has the burden of proving all elements necessary for confirmation as stated in §1225.[13] As to her claim arising from the Property Judgment, Rebecca objects to confirmation on the basis that: The Plan does not comply with § 1225(a)(5) regarding the treatment of Rebecca's claim, if fully secured; with § 1225(b)(1) regarding treatment of the unsecured claims, if her claim is partly secured and partly unsecured; with § 1225(a)(3), that requires a plan be proposed in good faith and not by any means prohibited by law; and with the best interests of creditors test of § 1225(a)(4).

Having found that Rebecca has a secured claim for the amount of the Barnhardt note, the Court finds the Plan does not satisfy § 1225(a)(5). That subsection requires the following with respect to each allowed secured claim:

> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> > (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

---

[13] *In re Clark*, 288 B.R. 237, 245 (Bankr. D. Kan. 2003).

17

Case 05-12251   Doc# 223   Filed 12/22/06   Page 17 of 20

> (C) the debtor surrenders the property securing such claim to such holder .

To the extent that the Plan failed to comply with this standard as to the portion of Rebecca's claim for the Bank of America, Farmers Sate Bank, and Citizens State Bank notes, these defects were cured when counsel announced during trial that the Plan would be amended to provide payment of the notes in full, including all pre- and post-petition interest and other charges. However, even with these amendments, the Plan is deficient because it provides no payment with respect to Rebecca's secured claim relating to the Gordon Barnhardt note. Confirmation is denied for noncompliance with § 1225(a)(5).

The foregoing ruling will require that Debtor to file an amended plan and new liquidation analysis consistent with this opinion. Treatment of Rebecca's claim must comply with § 1225(a)(5), which grants the flexibility to pay the claim in a lump sum or through periodic payments. The Court's finding that Rebecca has a judgment lien in the Debtor's interest in Ford County real property must be considered when determining the treatment of the claim of Bucklin National Bank. In addition, if the Court concludes in a supplemental memorandum and order that the Children's Trusts have an unsecured claim, this will require additional amendment of the Plan. Because a new plan will be required, the Court does not address Rebecca's additional objections that the Plan was not proposed in good faith and does not satisfy the best interests of creditors test. In addition, the Court has not examined the Plan to determine compliance with other Code requirements.

**THE COURT CONTINUES THE HEARING ON REBECCA'S MOTIONS FOR RELIEF FROM STAY AND TO DISMISS.**

The trial was also noticed for consideration of Rebecca's motion for relief from stay[14] to allow continued proceedings in state court, including the sale which was stopped by the filing of the petition under Chapter 12. The Court continues the hearing on this motion. To grant stay relief would preclude the Debtor from reorganizing under Chapter 12. The Court finds that relief from stay is not warranted at this time as it appears to the Court that given the values of the property a confirmable plan is possible. For the same reason, the Court continues the hearing on Rebecca's motion to dismiss.[15]

**CONCLUSION.**

For the foregoing reasons, the Court denies confirmation of the Plan. Any amended plan to be filed by the Debtor must treat Rebecca's claim for the notes of Bank of America, Citizens State Bank, Farmers State Bank, and Gordon Barnhardt as fully secured; make amendments if required because of the Court's ruling that Rebecca has a lien on Debtor's interest in the Ford County real property awarded under the Property Judgment which is prior to the mortgage lien of Bucklin National Bank; and include payment of the unsecured claim of the Children's Trusts, if the objection to that claim is overruled in a supplemental memorandum and order to be filed

---

[14] Doc. 42.

[15] Doc. 70. That motion is premised in part upon the argument that Debtor's interest in property is limited by the Property Judgment and the Debtor cannot purpose a viable plan because of this fact. At this time, the Court is not convinced that Debtor cannot propose a plan which will pay Rebecca's claim in full in accord with the standards of § 1225, thereby satisfying her property interest and leave sufficient property for other creditors and operation of a farming operation.

addressing that issue. The Debtor is entitled to one-half of the appreciated value of the AmeriTrade account.

**IT IS SO ORDERED.**

###

20

Case 05-12251   Doc# 223   Filed 12/22/06   Page 20 of 20